**Opinion filed July 1, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-08-00306-CR

_____

### JULIAN L. REYES, JR., Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**

**Mitchell County, Texas**

**Trial Court Cause No. 7008A**

### MEMORANDUM OPINION

The jury found Julian L. Reyes, Jr. guilty of the felony offense of driving while intoxicated. After the jury also found "True" to an enhancement paragraph in which it was alleged that Reyes previously had been convicted for the felony offense of intoxication manslaughter, it assessed his punishment at confinement for twenty years. We affirm.

Reyes argues one issue in this appeal: that the evidence was factually insufficient to prove that Reyes was guilty of driving while intoxicated. Specifically, Reyes maintains that the evidence was factually insufficient to show that he was intoxicated.

In order to determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of the contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *Goodman v. State*, 66 S.W.3d 283 (Tex. Crim. App. 2001); *Cain v. State*, 958 S.W.2d 404 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). We review the factfinder's weighing of the evidence and cannot substitute our judgment for that of the factfinder. *Cain*, 958 S.W.2d at 407; *Clewis*, 922 S.W.2d at 135. Due deference must be given to the jury's determination, particularly concerning the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000); *Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996). The court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9.

Mitchell County Deputy Sheriff Chris Duerstine testified that, on the day of the offense, he stopped Reyes because Reyes was speeding. A video was made of the traffic stop, and the State introduced it into evidence and published it to the jury. We have reviewed the video, and the scenes depicted in it support the evidence we outline in this opinion.

When Deputy Duerstine contacted Reyes, he discovered that Reyes had not renewed his driver's license in several years, and he also noticed that there was a very strong smell of alcohol coming from inside the vehicle. When Reyes got out of the vehicle, it appeared to Deputy Duerstine that he stumbled. He also leaned against the vehicle and was unsteady on his feet. Deputy Duerstine asked Reyes to move to the rear of the vehicle, and he noticed that Reyes's breath smelled of alcohol. On cross-examination, Reyes attempted to establish that the wind was blowing in such a direction that it would have blown any smell of alcohol away from Reyes and not toward Deputy Duerstine. Reyes at first told Deputy Duerstine that he had had a few beers and later said that he had consumed "about a six-pack."

Deputy Duerstine told the jury that Reyes's eyes were bloodshot and glassy and that, when standing in one place, Reyes swayed and had trouble standing still. For those reasons, Deputy Duerstine asked Reyes to sit down or to lean against the vehicle so that he would not fall.

2

Deputy Duerstine attempted to perform a horizontal gaze nystagmus test but was unable to complete the test because Reyes would not hold his head still and move only his eyes.

Reyes's attorney asked Deputy Duerstine whether he was familiar with twenty clues or signs that the National Highway Traffic Safety Administration recommends to help determine whether a person is driving while intoxicated. These clues or signs are observed while the vehicle is in motion. Although there are others, some of these clues or signs are turning in a wide radius, straddling the center or lane marker, striking other vehicles or objects, and driving less than ten miles below the speed limit. The deputy did not observe that any of the twenty clues or signs were present in this case. Deputy Duerstine also testified that he followed Reyes only for ten to fifteen seconds.

Deputy Duerstine called Trooper Ricardo Molina for assistance. Trooper Molina also testified at the trial. He received the call to assist at about 11:30 p.m. A separate video was made that showed Trooper Molina's involvement in this case. The State introduced it into evidence and published it to the jury. We have reviewed this video, and the scenes depicted in it support the evidence we outline in this opinion.

When Trooper Molina contacted Reyes, his breath smelled of alcohol, his eyes were red and glassy, and his responses to Trooper Molina's questions were slow. Trooper Molina administered a horizontal gaze nystagmus test to Reyes. Of the six clues that indicate intoxication during such a test, Reyes exhibited all six.

After completing the HGN test, Trooper Molina began to administer various field sobriety tests. Reyes did not successfully complete any of the tests except that he was able to say his ABCs perfectly. During one of the tests, Deputy Duerstine had to stand behind Reyes to keep him from falling over. The evidence shows that Reyes told Trooper Molina that he had bad knees as the result of a car accident in which he was involved in 1995 and that he still had a bad bruise from that. The trooper was able to observe Reyes long enough to see that there were clues present that indicated that Reyes was intoxicated.

Although Reyes was cooperative with Trooper Molina and was not belligerent, obscene, or rude, at times he either refused to, or could not, answer the trooper's questions. Trooper Molina told the jury that that was common with persons who are intoxicated. Reyes refused to submit to a blood or breath test.

3

Trooper Molina testified that it was his opinion that Reyes did not have the normal use of his mental and physical faculties and that he was driving while intoxicated. When asked if there was any doubt in his mind that, when he arrested Reyes, Reyes was intoxicated, Trooper Molina responded, "No, no doubt."

Manuel Reyes, one of Julian Reyes's younger brothers, testified for Reyes. Manuel told the jury that he had picked Reyes up late in the evening to go to a barbecue in the neighborhood. Manuel bought a six-pack of beer at some point in time, although the record is not entirely clear when. Manuel had had a twenty-four ounce beer earlier, but as far as he knew, Reyes had not had any beer before he drank two beers out of the newly purchased six-pack; there was no beer at the barbecue. In addition to the twenty-four ounce beer, Manuel had drunk one beer out of the new six-pack and was in the process of drinking another when Deputy Duerstine stopped them. There were two unopened beers in the vehicle when they were stopped. Manuel did not think that Reyes was intoxicated or impaired in any way. The jury was informed that the witness, Manuel, had been convicted twice for felony driving while intoxicated.

We have reviewed all of the evidence in a neutral light, and we determine that the evidence supporting guilt is not so weak as to render the conviction clearly wrong and manifestly unjust. Further, the evidence supporting guilt is not so greatly outweighed by the overwhelming weight of any evidence to the contrary as to render the conviction clearly wrong and manifestly unjust. The evidence is factually sufficient to support the verdict of the jury. Reyes's sole issue on appeal is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


July 1, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4